**Franklin E. TODD, Plaintiff,**

v.

**NORTHWEST AIRLINES, INC., Defendant.**

**Civ. A. No. 6638.**

United States District Court,
W. D. Washington, N. D.

Jan. 28, 1969.

---

Arnold J. Barer, George J. Toulouse, Jr., Seattle, Wash., for plaintiff.

W. R. McKelvy, Seattle, Wash., for defendant.

## MEMORANDUM OPINION

LINDBERG, Chief Judge.

This is an action brought by plaintiff, Franklin E. Todd, a flight engineer formerly employed by the defendant, Northwest Airlines, seeking to set aside an arbitration order by the System Board of Adjustment. Specifically, the plaintiff asks this court to set aside an order of the System Board entered September 28, 1964, which affirmed the defendant's termination of plaintiff's employment on the grounds that the plaintiff "influenced and encouraged the first pilot and other crew members to fly flight N027 of January 1, 1964, at a time when he had good reason to believe the first pilot should not take out the flight in the interest of public safety."

Plaintiff also seeks contract damages because of an alleged wrongful discharge and alleged breach of employment contract by the defendant.

After discovery and pretrial conferences a pretrial order was entered (referred to as Pretrial Order No. 1) for the purpose of submitting the case upon motions of both parties for summary judgment on the issue of whether or not the award of the System Board of Adjustment should be set aside. For the purpose of this memorandum opinion it will be helpful to set forth the pretrial order verbatim:

"Pursuant to Rule 16 of the Federal Rules of Civil Procedure and in accordance with the pretrial conference held on June 14, 1968, the following formulation of issues is herein set forth:

"I. JURISDICTION

"Without defendant's waiving its contention that this Court does not have jurisdiction to hear this matter for the reasons hereinafter set forth in defendant's Contentions of Law, the parties agree that:

"1. The plaintiff is a citizen of the State of Washington and was formerly employed by the defendant as a flight engineer.

"2. The defendant is a Minnesota corporation with principal offices in Minneapolis St. Paul, is engaged in the business of an interstate air carrier and does business in the State of Washington.

"3. The damages sought by the plaintiff exceed $10,000 exclusive of interest and costs.

"4. Plaintiff seeks a review of a System Board of Adjustment Order entered September 28, 1964, which affirmed the defendant's termination of plaintiff's employment. This court's review of the Adjustment Board Order is governed by Sections 153, 181 and 184 of the Railway Labor Act. 45 USCA § 153, 181, 184.

"II. ADMITTED FACTS

"1. On or about February 28, 1964, and prior thereto, plaintiff was employed as a flight engineer for Northwest Airlines, Inc.

"2. Northwest Airlines, Inc. had entered a collective bargaining agreement with the International Association of Machinists for and on behalf of flight engineers. Said contract was for the benefit of plaintiff and granted rights of tenure and seniority to plaintiff.

"3. On or about February 28, 1964, defendant terminated plaintiff's employment with Northwest Airlines, Inc.

"4. The collective bargaining agreement hereinabove referred to contained certain grievance procedure in the event of Company-imposed discipline on plain-

tiff. All of the conditions precedent to invoking the grievance procedure were met by plaintiff or his representatives.

"5. On August 18, 19 and 20, 1964, a grievance hearing was held in Minneapolis-St. Paul, Minnesota, before a System Board of Adjustment duly impaneled under the aforesaid agreement. The Company charges filed against the plaintiff were:

" 'A. He served as a crew member on Flight N027 of January 1, 1964, having used alcoholic beverages during the twenty-four hour period immediately preceding the departure time of Flight N027 of January 1, 1964.

" 'B. Further, he influenced and encouraged the first pilot and other crew members to fly Flight N027 of January 1, 1964, at a time when he knew of the physical deficiency of the first pilot assigned to the flight."

"6. On September 28, 1964, the System Board of Adjustment rendered its award against the plaintiff, sustaining the Company's termination of plaintiff's employment.

"7. Walter L. Gray, of Oklahoma City, was the neutral arbitrator in the System Board of Adjustment hearing involving the plaintiff.

"The following additional facts are not disputed but defendant contends they are not relevant to the issues of this case:

"1. In the course of the System Board of Adjustment hearing involving plaintiff a letter was introduced in evidence, a copy of which is referred to in plaintiff's listed exhibits.

"2. Subsequently, in October, 1964, a System Board of Adjustment hearing was held pursuant to a collective bargaining agreement entered into by and between defendant, the Airline Pilots Association, with respect to the termination of David G. Rall, pilot of Northwest Flight N027 of January 1, 1964; and in November, 1964, a System Board of Adjustment hearing was held pursuant to a collective bargaining agreement entered into by and between defendant, the Airline Pilots Association, with respect to the termination of Robert E. Lee, co-pilot of Northwest Flight N027 of January 1, 1964.

"3. Walter L. Gray, of Oklahoma City, was the neutral arbitrator in the System Board of Adjustment hearing involving Rall and Lee.

"4. On or about January 8, 1965, a decision was rendered in the System Board of Adjustment matters involving the said Rall and Lee, disciplining them, but not terminating their employment.

"III. DISPUTED FACTS

"A. Plaintiff contends as follows:

"1. That the letter referred to in paragraph 1, on pages 3 and 7 of this Pre-Trial Order and referred to in Plaintiff's Exhibits, is a forgery in that it was not the letter signed by Peter Kama.

"2. That the award imposing discipline upon the plaintiff herein is without foundation in reason or fact, in light of the following factors:

"(a) The duties of a flight engineer;

"(b) His relative responsibilities in the operation of aircraft;

"(c) His responsibility to follow the commands of the pilot and co-pilot;

"(d) The discipline imposed upon David G. Rall and Robert E. Lee;

"(e) Other discipline imposed in the administration of other grievance proceedings involving Northwest Airlines personnel.

"B. Defendant contends that for the purposes of this pre-trial order there are no issues of fact for the Court.

"IV. ISSUES OF LAW

"The parties agree that under the applicable sections of the Railway Labor Act including Sections 153, 181 and 184, the findings and order of the division of the System Board of Adjustment 'shall be conclusive on the parties,' except that the findings and order may be reviewed by a District Court upon the following basis:

"1. Whether or not the plaintiff was denied due process by some conduct of

the Adjustment Board in making its award.

"2. Fraud or corruption was practiced by a member (of the System Board of Adjustment) making the order.

"3. The award of the Adjustment Board was so arbitrary or capricious as to be wholly baseless and completely without reason.

"A. Plaintiff contends the following to be the issues of law:

"1. That the discipline award in this case is arbitrary and capricious and denies him due process as a matter of fact and law in light of the facts herein, and particularly in light of plaintiff's contentions contended in paragraph III 2. A.

"2. That defendant's introduction into evidence of the Peter Kama letter constituted fraud practiced by a party to the System Board of Adjustment proceeding.

"3. With respect to the remedy sought by the plaintiff in this case, in the event that plaintiff can as a matter of fact and law, impeach the award of the Board of Adjustment, an issue is raised as to the remedy which the court may grant. The parties agree that the award of the System Board of Adjustment bars plaintiff from proceeding under a common law theory of wrongful discharge. However, plaintiff contends that the court, upon the voiding of the System Board of Adjustment proceeding, has the power to entertain such an action.

"B. Defendant contends the following to be the issues of law:

"1. The decision of the System Board of Adjustment, which was rendered pursuant to mandatory arbitration procedure as set out in the Collective Bargaining Agreement upholding the Company's discharge of the plaintiff, was final and binding upon the parties, by virtue of Section 153 of the Railway Labor Act which provided that an order of the division of the System Board of Adjustment 'shall be conclusive on the parties.'

"2. Plaintiff's invoking the grievance procedure, provided by the Collective Bargaining Agreement, contesting his discharge by the Company constitutes an election of remedies; plaintiff therefore cannot maintain a Court action to recover damages for wrongful discharge.

"(a) Even though this Court should set aside the Order of the Adjustment Board on any of the grounds referred to in the previous paragraph of Defendant's Contentions, the Court does not have jurisdiction to entertain an action for damages for alleged wrongful discharge.

"V. EXHIBITS

"For the purpose of the Court's hearing this action at this stage of the proceedings in determining the various questions of law as contended by the parties, the following exhibits will be considered:

"1. The Collective Bargaining Agreements between Northwest Airlines and International Association of Machinists dated January 1, 1963, and January 21, 1964.

"2. Transcript of the Adjustment Board hearing, including the Adjustment Board Award, entitled:

" 'In the Matter of Arbitration

" 'Between

" 'NORTHWEST AIRLINES, INCORPORATED

" 'and

" 'INTERNATIONAL ASSOCIATION OF MACHINISTS, District Lodge No. 143

" 'IN RE: FRANKLIN E. TODD, Docket 70.'

"The following exhibits will be offered by the plaintiff. Defendant does not dispute their authenticity but contends they are not relevant to the issues of this case:

"(1) The letter of Peter Kama introduced in the System Board of Adjustment hearing as referred to on page 4,

paragraph 1. of Plaintiff's Contentions as to disputed facts.

"(2) The charges against David G. Rall and R. E. Lee which were made by Northwest Airlines and which ultimately gave rise to the System Board of Adjustment Hearing of October, 1964, referred to on page 3 of this Pre-Trial Order.

"(3) Portions of the record of the Adjustment Board Proceedings involving the Grievance Hearing of Rall and Lee which resulted in the Adjustment Board decision of January 8, 1965 referred to on page 4 of this Pre-Trial Order.

"VI.  ACTION BY THE COURT

"1.  The Court will consider the issues as contended by the parties as a basis for granting a summary judgment to the extent of ruling on said issues.

"2.  Appropriate motions and briefs will be filed with the Court on or by November 8, 1968.

"DATED this 25th day of October, 1968.

"WILLIAM J. LINDBERG
United States District Judge

"FORM APPROVED:

ARNOLD BARER                     .
WETTRICK, TOULOUSE,
    LIRHUR AND HOVE
Attorneys for Plaintiff

R. L. GEMSON                            .
SKEEL, McKELVY, HENKE,
    EVENSON & UHLMANN
Attorneys for Defendant
    Northwest Airlines, Inc."

---

The exhibits referred to in the pretrial order were admitted and reviewed along with extensive written briefs submitted by both parties in support of their respective motions.  After oral argument I indicated that defendant's motion should be granted but withheld ruling so as to permit a further review of the record and reexamination of plaintiff's arguments that the award of the System Board of Adjustment was arbitrary and capricious or void for fraud.

At the outset it should be noted that the court's jurisdiction in this proceeding is granted as well as limited under 45 U.S.C. § 153 First (q), which reads in pertinent part as follows:

"The court shall have jurisdiction to affirm the order of the division (of the Board) or to set it aside, in whole or in part, or it may remand the proceedings to the division for such further action as it may direct.  On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order."

■ The plaintiff's counsel argues that the record "coldly and clearly" indicates that Todd was not afforded the type of hearing contemplated by the Act and thus was denied due process.  This argument is grounded upon circumstances long preceding plaintiff's discharge by Northwest and having to do with the relationship between plaintiff and the International Association of Machinists Union.

In an unrelated proceeding long prior to the System Board of Adjustment hearing in this case, the plaintiff Todd was expelled from the Union for dual union-

ism, as a result of charges preferred by Mr. Pedersen on behalf of the Union. The same Mr. Pedersen also was the representative of the Union (there being no other union to represent Todd) appearing at the System Board of Adjustment hearing with respect to his grievance against Northwest Airlines. In addition, Todd was one of a number of individual plaintiffs in an independent lawsuit pending against the International Association of Machinists at the time of the Board hearing, which suit is still pending in this court. Following his discharge Todd employed his own attorney and appeared at the hearing with his own counsel, Mr. Schumacher. Mr. Pedersen was at first adamant in protecting the Union's statutory right to represent Todd at the hearing. However, after some colloquy in which the Board members as well as counsel took part, and following a recess conference between Pedersen and plaintiff and his counsel, the parties entered into a stipulation whereby Mr. Schumacher was to call and examine witnesses and elicit and argue the facts of the case, while Mr. Pedersen, on behalf of the Union, reserved the right to argue questions of contract interpretation. Mr. Todd, through his attorney, accepted this stipulation, and himself expressed assent to having his case heard by the Board as then constituted.[1]

1. REFEREE: Now, I want you to dictate into the record that you have agreed that this is to be bound by this System Board ruling.

MR. PEDERSEN: I am going to say more than an agreement, Mr. Chairman, because I want this definitely in the record so it's clear once and for all, the relationship to the International Association of Machinists and its liability.

I have discussed this question of representation before this Board, the System Board of Adjustment, and its liabilities which Mr. Todd has incurred by seeking representation of Mr. Schumacher and his firm and any other legal counsel that Mr. Todd may have talked to or used the services of, that it has been agreed by Mr. Schumacher and myself that any and all liabilities incurred by the previous attorneys and law firms are all of Mr. Todd's liability, and none of the International Association of Machinists' liability.

Further, we have agreed as far as the System Board procedurely-wise, under the agreement, I retain jurisdiction of this discussion before this Board;

Further, if we get into any contractural application under the Flight Engineers Agreement, that I retain the right of this representation.

Now, as I see the case, there is nothing contracturally that we feel we are going to get involved in, but in the event that we do, that I am the representative party when we get to that point, and, therefore I would like on the record a statement by Mr. Schumacher agreeing to this stipulation.

MR. SCHUMACHER: I agree to the stipulation. I am not an attorney hired or retained by the IAM. I have no connection with them. I have no intent to hold them responsible for any fees or charges.

I am Mr. Todd's personal attorney, and the agreement as to fees and charges is between me and Mr. Todd, and as to any matters regarding the contract or the authority of the union to make statements regarding it, well, that rests with the IAM and Mr. Pedersen as their representative, and I will agree to proceed on that basis, and I understand I will be permitted and authorized and be in control of calling witnesses and interrogating witnesses and submitting a brief in this case.

MR. PEDERSEN: This has been agreed upon, Mr. Chairman.

MR. FLOAN: Did you say that you would call witnesses?

MR. SCHUMACHER: Yes.

REFEREE: I thought he was going to call the witnesses.

MR. PEDERSEN: He will be handling the entire presentation before this Board on Mr. Todd's behalf.

MR. ABBOTT: I accept that agreement of Mr. Pedersen and Mr. Schumacher.

This means that Mr. Schumacher will conduct the defense of Mr. Todd subject to Mr. Pedersen's argument, if any, that he may offer this Board with respect to an interpretation of specific language of the agreement.

There was one additional comment that seemed to me which you made, Mr. Pedersen, that should be clarified, and that is that this agreement was conditioned upon Mr. Todd assuming the liability for any attorneys' fees that may have been incurred or may be incurred

In arguing that plaintiff was denied due process under the facts as outlined above he relies on Edwards v. Capital Airlines, 84 U.S.App.D.C. 346, 176 F.2d 755 (1949), where, in a dispute involving seniority rights among employees, the union presented the claims of the majority against the claims of the two plaintiffs, a small minority and not parties to the proceeding although represented by counsel. There the interests of the majority were clearly antagonistic to those of the plaintiffs. Such is not the situation in our case. Here the Union would and apparently did have a definite interest in seeing to it that no precedent was set allowing flight engineers to be fired in circumstances such as plaintiff contended existed.[2] In addition, the record shows that the plaintiff, knowing the attitude of the Union, accepted the Board, after obtaining a stipulation that his own attorney would be in control of calling witnesses and interrogating witnesses and submitting a brief in the case. Review of the record shows that Mr. Schumacher was indeed in control of eliciting evidence before the Board.

■ The plaintiff complains further that "the tests of Edwards v. Capital Airlines, *supra,* relating to the right to counsel could never be met, since the union forced Todd's counsel, under threat of withdrawing the grievance, to consent to a bifurcation of representation." The basis in the record for this statement appears at the outset of the hearing (Tr. 2 through 21), at which time it was brought out that under the System Board hearing procedure and agreement only the Union could bring a case on behalf of an employee whether a Union member or not, and in the event the Union withdrew from the case Mr. Todd would have no case. When counsel for plaintiff in his supplemental memorandum in support of motion for summary judgment quoted Pedersen as stating Todd "does not have a case" counsel permits the inference that Pedersen was commenting on the merits of Mr. Todd's grievance. Such inference I do not believe permissible. A fair reading and interpretation of the whole colloquy before and after the recess (Tr. 2 through 25) between the Board members, counsel and Mr. Pedersen does not indicate any actual threat of withdrawal by the Union. Even if such interpretation could be drawn, the stipulation following the recess taken shortly after the opening of

---

here, and you may recall that Mr. Vance represented Mr. Todd in Seattle.

Are you referring to fees that Mr. Vance—

MR. PEDERSEN: That is the "any other attorneys also."

MR. ABBOTT: All right. Now, Mr. Schumacher agreed that *his* expenses were those of Mr. Todd. It would appear to me that the entire stipulation has not been accepted.

REFEREE: Let me ask this question of Mr. Todd. I want you to state into the record, sir, that you assume the liability for the payment of all attorneys' fees and that they will not become the responsibility of either Northwest or IAM.

MR. TODD: Yes, I will so state; all previous attorneys fees have been paid with regard to Mr. Vance; and my attorney here today has been retained by me and I will assume all liabilities towards his expenses.

REFEREE: And do you also agree that you will abide by the decision of this System Board?

MR. TODD: Yes, I do.

MR. PEDERSEN: With that, Mr. Chairman, I would like to formally for the record introduce Mr. Schumacher as representing Mr. Frank Todd before this Board.

REFEREE: Okay, but you reserve your rights?

MR. PEDERSEN: Yes.

REFEREE: I think we all agreed now and it's in the record and you are bound by it; so don't come along later and say you are going to back out. (Pages 21–25, Transcript of hearing In the Matter of: International Association of Machinists District Lodge No. 143 vs. Northwest Airlines, Incorporated, before IAM-NWA System Board of Adjustment, August 18, 1964.)

2. The dissent of the Union member of the Division of the Board of Adjustment from the award of the majority approving discharge is persuasive evidence on this issue.

the hearing makes clear that Mr. Schumacher, Todd's counsel, as well as Mr. Todd, freely and fully agreed to the procedures. Furthermore, the record does not disclose that Mr. Pedersen in any way injected himself into the proceeding thereafter. The record shows that the plaintiff's counsel had considerably more control over the presentation of the plaintiff's case than that exercised by the employees' counsel and approved in Edwards v. Capital Airlines, *supra*.

■ The plaintiff further complains of the Company "attempts to predicate Todd's discharge upon C Manual provision 20:10:5." It should be noted that the principal Company regulation relied upon was the Company's "C Manual" at reference 60:15:15A.[3] There appears to be nothing in the agreement between Northwest and the Union, which governs the procedure to be followed, which requires that dismissal of an employee must be based upon violation of some specific written rule or regulation of the Company. The one pertinent provision of the agreement relating to grievances involving discipline is Section 25, Grievance B(3) which reads as follows:

"Todd Joint Exhibit 1
Agreement
(Dated July 1, 1963)
Section 25
Grievances
\* \* \*
"B. Grievances involving Discipline.
\* \* \*
"(3) Prior to any investigation or hearing the Flight Engineer and the Union General Chairman shall be notified in writing of the precise charge or charges against the Flight Engineer. Thereafter he shall be given necessary time in which to secure the presence of witnesses and shall have the right to be represented by the Union in all investigations or hearings."

This section was complied with, and clearly Todd and his counsel were fully aware of the precise charges against him and this was sufficient.

■ Another contention of plaintiff is that the Board's written decision shows that it exceeded its jurisdiction in the case, in that the Board only had jurisdiction to rule whether or not the discharge could be supported on the basis of the charges filed by the Company. The charge eventually found to be supported by the evidence was:

"Todd 'influenced and encouraged the first pilot and other crew members to fly Flight N027 of January 1, 1964, at a time when he knew of the physical deficiency of the first pilot assigned to the flight'"

The Board's award stated:

"The Board finds that there is sufficient evidence to substantiate the second charge filed against Mr. Todd; he influenced and encouraged the first pilot and other crew members to fly Flight N027 of January 1, 1964, at a time when he had good reason to believe the first pilot should not take out the flight in the interest of public safety."

---

3. 5. Request for specification.
   You requested a statement of the rule or regulation relied upon by the Company with respect to the second charge against you. The Company's Counsel indicated two sources that were relied upon which were the Federal Aviation Regulations and NWA's Flight Operations Manual, Volume C.
   The principle (sic) Company regulation governing the conduct of crew members with respect to flight operations is contained in NWA's C Manual at reference 60:15:15 A. This rule establishes the safety of flight operations as the first and most important element of the responsibility of crew members. Your attention is also called to the C Manual and FAR's with respect to the minimum crew requirements and the prohibition against crew members operating with a known physical deficiency. (Volume C reference 20:10:5 and FAR Part 61.45)
   \* \* \*
   (From letter dated March 27, 1964 to Todd from NWA in Todd Exhibit 1, In the Matter of: International Association of Machinists District Lodge No. 143 vs. Northwest Airlines, Incorporated, before IAM-NWA System Board of Adjustment.)

Plaintiff concludes that the slight variation in wording between the award and the filed charge shows that the Board exceeded its jurisdiction.

The Company is not in the position of nor does it bear the burden of a state in prosecuting a criminal case. This was an arbitration proceeding between the Company and the Union as representative of the rights of an employee. The award states that there was evidence to support the charge as made, and a reading of the record bears this out. The further statement of facts found does not detract from the general finding and the award made.

■ The Board did have to decide whether under the evidence Todd knew or at least believed Captain Rall at the time involved was under the influence of liquor or suffering from some physical deficiency, and, so believing or having good reason to believe, he nevertheless influenced and encouraged Rall and/or other crew members to fly. Under the charge the Board sustained it was not necessary for Northwest to establish that Rall was in fact under the influence of liquor or suffering from some physical deficiency.

The issue was a factual one, the determination of which rested upon credibility of witnesses as well as circumstantial evidence. Gray, the neutral member, and the Company member of the Board, constituting a majority, accepted the testimony and other evidence in support of the Company's position rather than that of Todd, and sustained the action of Northwest in discharging Mr. Todd on the second charge filed against him. The Union member of the Board apparently accepted Todd's version and dissented from the action of the majority.

■ Finally, I consider plaintiff's charge of fraud based upon the Kama letter. Assuming it was a forgery (an assumption that is at best highly questionable) there is no evidence or indication of any kind that any member of the Board knew this, nor is there any fact from which such an inference could

be drawn. Thus there is no support whatsoever for the charge that fraud or corruption was practiced by a member of the Board or a party to the proceeding so far as the letter is concerned, and there has been no other basis of fraud brought before the court.

■ From Todd's point of view, there was great disparity between the discipline imposed upon him and that finally meted out to Rall and Lee under the award of the Board in that case. The same occurrences were under examination in both proceedings. The focus in each case was on the participation of different individuals, it is true, but the duties and activities of the three employees interlocked closely enough on the day in question that one would naturally expect a certain consistency in the treatment of all three. Northwest Airlines certainly thought so, for it fired all three. However, when the cases came before the System Board of Adjustment, Todd's discharge was affirmed, and Lee and Rall received relatively short suspensions.

If the law required consistency in the results of these two proceedings, this would not mean that the result in Todd's case was necessarily improper. If the consistency requirement rested on some principle of collateral estoppel, res judicata, or lack of disparity, it would seem a more logical result to expect that the decision of the Lee-Rall System Board of Adjustment hearing should have been overturned, and that Lee and Rall should have been discharged, just as Todd was. The hearings were adversary proceedings in which both the airline and the employees had rights to be protected, and the right of the airline to fire for misconduct was, and is, no less worthy of protection than the right of the employees to continued employment.

However, the two proceedings were separate proceedings, and the evidence was not exactly the same in each. Nor is it certain that the witnesses which seemed most credible in the Todd case were just as believable in the second proceeding. The results of the two cases

are fully consistent with the presumption that the Board in each case considered the evidence before it in the case, and made its ruling in accordance with that evidence.

The court has read the extensive record in this case, considered the applicable law and finds and concludes that the award of the System Board of Adjustment was not arbitrary or capricious, that no fraud or corruption was practiced by a member (of the System Board of Adjustment) making the order; and that there was no fundamental unfairness which might amount to a denial of due process. Failing this, the court has no jurisdiction to make any change in the award of the System Board of Adjustment.

Defendant's motion for summary judgment will be granted and an order dismissing the complaint may be entered.